Opinion of the Court.
THE following entry was sustained by the court below against an elder grant, in favor of M’Clung’s heirs, and from that decree each party has appealed, one contending in this court that the entry is invalid and the other that the construction given to it, does not include as much of the land in controversy as ought to be included, when rightly surveyed.
“May 16th 1780—James Douglass assignee, &c. enters 1000 acres upon a treasury warrant, on the south side of the Ohio river, beginning at a buckeye, poplar and beech, on the river bank, near the head of the third bottom, below the three islands, about forty four miles below the mouth of the Scioto, running from thence down the river, and binding on the same 656 poles S. 10 W. and back for quantity.”
' The Ohio was an object notorious in the history of the country. The mouth of Scioto and three islands are proved in this cause to have been very notorious before the date of this entry. The distance below the mouth of Scioto, is, in fact, somewhat less from the point claimed, than that stated in the entry. But this is conceived to be immaterial, as the distance named, answers the purpose of shewing more particularly, the islands intended, had they been uncertain, add further it is of no importance. In passing downwards from the three islands, and counting the bottoms as they occur, the one claimed by the complainants below, is the third. There is some proof adduced that this bottom was notoriously known by the name of the third bottom below these islands. But we have not thought *187 it necessary to determine whether this proof establishes a sufficient degree of notoriety, as there is no bottom to rival it. The other small ones presenting at the months of creeks or branches, are only such as would necessarily attend such streams, passing through the hills to the river, and were not, in the language of that day, and cannot yet with propriety, be called Ohio bottoms, according to the proof in the cause, it is evident that the bottom in question, was taken as the third, by those who passed down, noting the bottoms as they passed, and that it would be so termed at this day, as the hills approach near the river and form what is vulgarly termed narrows, at all other points, excepting at these three bottoms, and excepting also, the small plains at the mouths of streams. The notoriety of the bottom, therefore, proved in the case, may be dispensed with, as the bottom is equally certain without it. We are told, that the locator is to begin near the head or upper end of this bottom. Accordingly, a short distance below the head the trees called for are proved to have existed, till of late years, and that they were marked as corner trees many years previous to the date of this entry. The entry, it is true, does not inform us that the trees were marked at all, and from its silence, it may be doubtful, whether the marking can aid the entry. But if they could be found and identified without the marks, it is certain the marks cannot vitiate the entry, and might be a mean of helping the inquirer to conclude that these were the trees intended. Now, although it is in proof that poplar, beech and buckeye, were of frequent growth in these bottoms, and some in the bottom claimed, yet it is evident, that the trees claimed were the only trees of the kind near the head, and none could be found to rival them for a considerable distance above and below. No inquirer could, on reasonable search, as trees of three different kinds are called for, have missed finding them, or have doubted that they must be the trees intended, even if they had presented no marks at all, especially as it is evident from the location, that the locator intended to include and appropriate the bottom. We, therefore, concur with the court below in sustaining this as a valid entry.
The mode of surveying involved in the appeal of the complainants below, forms the next inquiry. The *188 court below has directed the survey of the 1000 acres by commencing at the beginning and extending down with the meanders of the river the distance called for, then running from the termination of this line, south ten degrees west, so far that a line run to the beginning will include the quantity, making the survey as near a triangular figure as the curves of the river, which forms one line, will admit. It is contended by the complainants below, that the survey ought to extend S. 10, west from each end of the line on the river so far that a line parallel to the general course of the stream, will include the quantity.
The ancient principle, which has long governed the decisions of this court, that the constructive figure of an entry ought to be rectangular, unless the calls otherwise direct, or as near a square as practicable, when the locator has shewn a disposition to deviate partially from a square, must, we apprehend, apply to and govern this case. The difficulty arises from the words " S. 10, west and back for quantity.” The words "S. 10, west,” cannot intend to point out the course down the river, and be considered as a further direction for that line, because the line is to bind on the river, which runs a northwestwardly course. They must then be applied to the next direction from the river, and the " words back for quantity,” must mean, 1st. back to the termination on the river or base line, or 2dly. back from the river as to the body of the land, or 3dly. back to the beginning, after running S. 10 degrees west, from the termination of the base. The first meaning is absurd, as it would give the locator no land, which never could be intended. The third departs from the rectangular principle, and places the survey in a triangular form, by construction, which is inadmissible, unless compelled by the calls of the entry. And if the words do mean " back to the beginning” from the termination of a line south, ten degrees west, from the termination of the base, the locator ought to he presumed to intend going back to the beginning with the land, running a back line parallel to the general course of the river, which would amount to the same thing as the second construction, which we conceive is the right one. The survey ought, therefore, to be constructed upon the river or base line, by extending from each end thereof, S. ten degrees west, so far that a line *189 parallel to the base, which is the general course of the river, or a straight line extended from each end of the six hundred and fifty six poles, run with the meanders of the stream, will include the quantity of one thousand acres.
The decree of the court below, must, therefore, be reversed with costs, and the cause be remanded for a decree to be there entered conformable to this opinion, and M’Clung’s heirs must recover the costs of both appeals.